IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA | ) ) ) | |
| Plaintiff, | ) ) | CIV 08-355-JHP |
| v. | ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, et. al, | ) ) ) ) | |
| Defendants. | ) | |

# ORDER

This matter comes before the Court upon the Defendants' Motion to Dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(7) for an inability to join the Cherokee Nation of Oklahoma, a required and indispensable party under Fed. R. Civ. P. 19. On September 30, 2008, the United Keetoowah Band of Cherokee Indians in Oklahoma ("UKB") filed this lawsuit which Plaintiff describes as:

> [A]n action by the Tribe seeking a declaratory judgment that the Defendants violated their statutory requirement (1) to obtain the Tribe's authorization prior to entering a contract for health services with the Cherokee Nation of Oklahoma (an entity not organized under the Oklahoma Indian Welfare Act), (2) to provide meaningful consultation to the Tribe pursuant to their general trust responsibilities and applicable law, and (3) to assure services to all tribal members in the service area of the health service contract at issue herein. The Tribe may also seek injunctive relief to prevent the Defendants from continuing to operate pursuant to an agreement with the Cherokee Nation of Oklahoma, from relinquishing control of certain health care facilities to the Cherokee Nation of Oklahoma or from abiding by a Self-Governance compact with the Cherokee Nation of Oklahoma until Defendants comply with the law.

UKB Complaint ¶ 1. In its Complaint, Plaintiff seeks not only a variety of declaratory judgments, but also prays for injunctive relief which would impact Defendants' relationship with a non-party, the Cherokee Nation of Oklahoma ("Cherokee Nation"):

1. For a declaratory judgment stating that Defendants are in violation of the statutory requirements of 25 U.S.C. § 450b(1) and 25 C.F.R. § 900.8(d)(1).
2. For a declaratory judgment stating that Defendants' violation of 25 U.S.C.§ 450b(l) and 25 C.F.R. § 900.8(d)(l) is a breach of Defendants' general trust duties and violation of applicable law.
3. For injunctive relief preventing Defendants from continuing to operate pursuant to an agreement with the CNG, relinquishing control of Hastings to CNG, or abiding by the CNG Self-Governance compact until Defendants comply with the aforementioned provisions of law.
4. For a declaratory judgment that Defendants are in violation of 25 U.S.C. § 450j(i)(l).
5. For injunctive relief preventing Defendants from continuing to operate pursuant to an agreement with the CNG, relinquishing control of Hastings to CNG, or abiding by the CNG Self-Governance compact until Defendants comply with 25 U.S.C. § 450j(i)(l ).
6. For a declaratory judgment stating that Defendants have not consulted with the Tribe regarding the IHS budgetary process and the operations under the agreements with CNG for services impacting the Tribe and its members as required by 25 C.F.R. § 900.3(b)(6) and 25 .
7. For a declaratory judgment stating that Defendants are in violation of 25 C.F.R. § 900.3(b)(6).
8. For a declaratory judgment stating that Defendants' failure to consult in accordance with 25 C.F.R. § 900.3(b)(6) and 25 U.S.C. § 1631 has deprived the Tribe from fully participating in the management, planning, and administration of programs impacting its tribal members, in direct contravention to the stated purpose of the ISDEAA.
9. For a declaration requiring that Defendants provide meaningful consultation to the Tribe regarding the IHS Facility and all relative contracts, further addressing the concerns of the Tribe and its members regarding their access to healthcare.
10. For an order enjoining Defendants from relinquishing control of Hastings to CNO, or abiding by the CNO compact unless and until Defendant adequately complies with its general trust obligation to provide meaningful consultation to the Tribe regarding the IHS Facility in accordance with all applicable law.
11. For an award of the cost of the suit, without limitation, attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable federal statues, and under general principals of law and equity, and the fees and costs for expert assistance.
12. For such other and further relief, both at law and in equity, to which the Tribe is or may show itself entitled.

UKB Complaint, p. 14-16.

## I. PROCEDURAL BACKGROUND

As authorized under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. §§450 et seq., the United States recently transferred a hospital located in Tahlequah, Oklahoma, the W. W. Hastings Indian Hospital ("Hastings Hospital"), from the Indian Health Service ("IHS") to the Cherokee Nation. Cherokee Nation assumed operation of all programs, services, functions and activities at Hastings Hospital under an ISDEAA compact or contract[1] with IHS.

UKB responded to the transfer by filing the instant Complaint challenging the contract between IHS and the Cherokee Nation. In each count of the Complaint, UKB asks the court to declare the contract between Cherokee Nation and IHS is unlawful and to enjoin IHS actions pursuant to the contract. UKB Complaint ¶¶ 28, 32, 38, 44.

Defendants have filed a motion asking this Court to dismiss this action pursuant to Fed.R.Civ.P. 19 and find the Complaint fails to join the Cherokee Nation, a required and indispensable party under Fed. R. Civ. P. 19. UKB responded, arguing Defendants must produce actual evidence showing Cherokee Nation's interest in the litigation. UKB further claims that it merely seeks declaratory relief and is not seeking to invalidate or disrupt the agreement between Defendants and Cherokee Nation. Defendants ask this Court to hold that joinder of the Cherokee Nation is not feasible because the Cherokee Nation, as a federally-

---

[1] The term "compact" is used to refer to an agreement between sovereign entities. The term "contract" as used in this memorandum is intended to include such compacts.

recognized tribal government, possesses sovereign immunity and also urges that equity and good conscience require dismissal.

## II. STATUTORY BACKGROUND

**A.     The Indian Health Service and Its Authorizing Statutes**

In 1954, Congress transferred responsibility for the health care of American Indians and Alaska Natives from within the Department of the Interior ("DOI"), Bureau of Indian Affairs ("BIA"), to what is now IHS, an agency within the Department of Health and Human Services ("HHS").  See U.S. CONST. ART. I sect. 8, cl. 3 (granting Congress the plenary power to legislate in the field of Indian affairs).  IHS' principal mission is to provide primary health care for the approximately 1.9 million American Indians and Alaska Natives throughout the United States.  See IHS Fact Sheet: Year 2008 Profile (June 2008), http://info.ihs.gov/Profile08.asp ("2008 Profile").  See also S. Rep. No. 102-392, 102d Cong., 2d Sess., at 2-3 (1992), reprinted in 1992 U.S.C.C.A.N. 3943 (identifying 1.5 million American Indians and Alaska Natives at that time); and Lincoln v. Vigil, 508 U.S. 182, 185 (1993) (identifying 1.6 million American Indians and Alaska Natives at that time).

IHS provides health care to American Indians and Alaska Natives through three separate mechanisms: (1) by administering health care services directly through IHS facilities and with IHS' own employees; (2) by contracting with tribes and tribal organizations to allow tribes to independently operate health care delivery programs previously operated by IHS; and (3) by funding contracts and grants to organizations operating health programs for urban Indians.  S. Rep. No. 102-392, at 4.  Under the first two mechanisms, IHS and its tribal contractors deliver health care services through 163 "service units" that are grouped geographically within 12 IHS

Area Offices and overseen by a Headquarters Office located in Rockville, Maryland. 2008 Profile.

IHS' authority to provide health care services to American Indians and Alaska Natives flows from two primary statutes. The first, the Snyder Act, 25 U.S.C. §13, is a general and broad statutory mandate authorizing IHS to "expend such moneys as Congress may from time to time appropriate for the benefit, care, and assistance of the Indians" for the "relief of distress and conservation of health." 25 U.S.C. §13 (providing the authority to BIA); and 42 U.S.C. §2001(a) (transferring the responsibility for Indian health care to IHS). The second, the Indian Health Care Improvement Act, 25 U.S.C. §1601 et seq., establishes numerous programs specifically created by Congress to address particular Indian health initiatives, such as alcohol and substance abuse, diabetes, medical training, and urban Indian health.

**B.     The Indian Self-Determination and Education Assistance Act**

In 1975, Congress enacted the Indian Self-Determination and Education Assistance Act ("ISDEAA"), codified at 25 U.S.C. §§450 et seq., and designed the statute to foster Indian self-government by permitting the total transfer of certain Federal programs to tribal governments and other tribal organizations. 25 U.S.C. §§450, 450a. In the opening paragraphs of the ISDEAA, Congress declared its commitment to the Federal Government's unique relationship and responsibility to Indian tribes and to Indian people. Id. Further, Congress declared that this relationship should be carried out through the establishment of a meaningful self-determination policy that would decrease Federal domination of programs for Indians and effectuate meaningful participation by Indian tribes in the planning, conduct, and administration of Indian programs and services. Id.

5

The ISDEAA directs the Secretary of HHS, upon the request of an Indian tribe, to enter into a "self-determination compact" with that tribe.  25 U.S.C. §§450f(a)(1), 450b(I) (defining Secretary).  A self-determination compact is a contract between a tribe or tribal organization and the Secretary for the "planning, conduct and administration of programs or services which are otherwise provided [by IHS] to Indian tribes and their members pursuant to Federal law."  Id. §450b(j).  By the end of fiscal year 2007, IHS had entered contracts with 323 tribes and tribal organizations under the ISDEAA. IHS Fact Sheet: Tribal Self-Determination (January 2008), available at http://info.ihs.gov/TrblSlfDtrm.asp.

The ISDEAA  states that "nothing" in the Act shall be construed as "affecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit enjoyed by an Indian tribe."  25 U.S.C. 450n.

**C.    Cherokee Nation's ISDEAA Contract**

The ISDEAA provides that any Federally-recognized tribe has a right to enter into a self-determination contract and to assume operations of health programs previously conducted by IHS.  Cherokee Nation entered a contract (also known as a "Self-Governance compact") and assumed control of all applicable programs, services, functions and activities associated with Hastings Hospital on October 1, 2008.  UKB Complaint ¶ 13.

# III. RULE 19 ANALYSIS

Under Rule 19, a court must dismiss an action if: (1) an absent party is required, (2) it is not feasible to join the absent party and (3) it is determined "in equity and good conscience" that the action should not proceed among the existing parties. Philippines v. Pimentel, ___U.S.___, 128 S. Ct. 2180, 2185 (2008). Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001).[2]

For the purpose of Rule 19 analysis, the ISDEAA contract at issue in the instant case can be analyzed like any other contract. Cherokee Nation v. Leavitt, 543 U.S. 631, 639 (2005) ("Language [in the ISDEAA] strongly suggests that Congress... meant to treat alike promises made under the Act and ordinary contractual promises."). Because there is nothing unique in the ISDEAA that would change the Rule 19 analysis, the precedent affirming the rights of absent contractors in varying scenarios to be present in lawsuits affecting their contracts is applicable. See e.g., United States ex rel. Hall v. Tribal Dev. Corp., 100 F.3d 476, 479 (7th Cir. 1996) (citing Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) ("a contracting party is the paradigm of an indispensable party")) and Kescoli v. Babbitt, 101 F.3d 1304, 1310 (9th Cir. 1996) (Navajo and Hopi nations required parties in a suit by a Navajo Nation member challenging a mining permit issued by the Secretary of the Interior because the action would affect the tribes' lease agreements with the mining company).

---

[2] Rule 19 was changed in 2007. The word "required" replaced the word "necessary" and the word "indispensable" was removed. The changes are stylistic only. Pimentel, 128 S. Ct. at 2184 (agreeing with the Rules Committee comment that the changes to Rule 19 are changes of style and not substance).

A party to a contract is the quintessential "'indispensable party' and no procedural principle is more deeply embedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable." Jicarilla Apache Tribe v. Hodel, 821 F.2d 537, 540 (10th Cir. 1987) (quoting Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir. 1975)). In Jicarilla, a petroleum company sued the federal government over its oil and gas leases on the Jicarilla Apache Reservation. Id. at 538. The court affirmed the district court's dismissal of the company's action, finding the Jicarilla Apache Nation indispensable because the "Tribes's interest in the oil leases is at the heart of the controversy" and that it could not be joined because of its sovereign immunity. Id. at 540. See also, United States ex rel. Hall v. Tribal Dev. Corp., 100 F.3d at 479.

In the instant case, as in Jicarilla, the heart of the controversy is a contract - specifically the contract entered into by IHS and the Cherokee Nation. The Cherokee Nation can claim a direct interest relating to the subject of this action because, if UKB is successful, the requested relief will immediately affect the Cherokee Nation's contract with IHS. For example, the requested relief by UKB would enjoin the Cherokee Nation from operating Hastings Hospital.[3] Moreover, such a ruling would potentially disrupt health care services for Cherokee Nation tribal members, UKB tribal members and members of other tribes who are served by the Cherokee Nation at the Hastings Hospital.

Joinder of one of the parties to the contract at issue, the Cherokee Nation, is not feasible because the Cherokee Nation, as an absent tribal sovereign government, possesses sovereign

---

[3]The Court notes that UKB's Complaint was filed one *day* before the October 1, 2008, transfer of Hastings Hospital under the IHS/CN contract.

immunity. Therefore, for reasons discussed below, this Court, in equity and good conscience, must dismiss the UKB action.

A.   **Cherokee Nation is a Party to the Contract Challenged by the Plaintiff and is Therefore a Required Party under Rule 19(a).**

A party is required if, in its absence: (1) complete relief is not possible among those already parties to the action or (2) the absent party claims a legally protected interest relating to the subject of the action and its interest will be impaired or impeded. Rule 19(a). Citizen Potawatomi Nation, 248 F.3d at 997.

Citizen Potawatomi Nation is one of several courts that has relied on the basic principle that a party to a contract is the paradigm of a party that is required under Rule 19(a). In Citizen Potawatomi Nation, the plaintiff challenged the Department of the Interior's method for calculating the funding that five tribes received through ISDEAA contracts. Id. at 997-1001. The Tenth Circuit Court of Appeals applied a Rule 19 analysis and found its requirements were met because the absent tribes (the Shawnee Tribe, the Kickapoo Tribe of Oklahoma, the Sac & Fox Nation, and the Iowa Tribe of Oklahoma) claimed an interest relating to the subject of the action — a Citizen Potawatomi lawsuit which may have altered the funding that the four absent tribes would receive in their contracts. Id. at 999.

In Tribal Dev. Corp., the plaintiff sought to void contracts regarding goods and services for casinos between the (absent) Menominee Tribe and the Tribal Development Corporation, 100 F.3d at 477. The court held that the Menominee Tribe had a clear commercial stake in the outcome and it was "beyond dispute" that the tribe was a necessary party. Id at 479. In Am. Greyhound Racing, Inc. v. Hull, horse and dog track owners and operators brought an action against the Governor of Arizona challenging the legality of the governor's actions in negotiating

new gaming contracts. 305 F.3d 1015, 1018 (9th Cir. 2002). Since litigation might have led to the automatic termination of the gaming contracts, the court found "the interests of the tribes in their compacts are impaired and, not being parties, the tribes cannot defend those interests." Id. at 1023.

In Kescoli v. Babbitt, the court held that the Navajo and Hopi nations were required parties in a suit by a Navajo Nation member challenging a mining permit issued by the Secretary of the Interior because the case would affect the tribes' lease agreements with the mining company. 101 F.3d 1304, 1310 (9th Cir. 1996). Therefore, the caselaw demonstrates the absent contracting party is required because a contracting party has a plain, clear and vital interest in the contract at issue. Here, the Cherokee Nation has a vital and immediate interest because this action involves the Cherokee Nation's contract.[4] Accordingly, the Cherokee Nation is a required party.

> B. **Tribal Sovereign Immunity Renders Any Effort to Join Cherokee Nation, a Required Party, Unfeasible.**

---

[4] In contrast, in a recent case which did not involve a contract, the court found no linkage between the claim of the absent party (the Cherokee Nation) and the subject matter of the action (also filed by the UKB). United Keetoowah Band of Cherokee Indians of Okla. v. U.S., 480 F.3d 1318 (Fed. Cir. 2007). The UKB brought a statutory claim under an independent section of the Cherokee, Choctaw, and Chickasaw Nations Claims Settlement Act ("Settlement Act"), 25 U.S.C. §§ 1779-1779g, that provides a right for the UKB and other specified Tribes to sue the United States over claims about the Arkansas Riverbed Lands of Oklahoma (but that "by its terms... does not apply to the Cherokee, Choctaw, and Chickasaw tribes" who are covered by other sections of the Act). Id. at 1321. The court held that the Cherokee Nation did not possess any interest relating to the UKB's statutory claims and that awarding monetary damages to the UKB under the Settlement Act would not affect the Cherokee Nation's property interest in the Riverbed Lands. Id. at 1325-1326. Therefore, the Tenth Circuit held that the absent Cherokee Nation could not claim an interest in the UKB action and was not a required party. Id.

Under Rule 19(a), a required party must be joined "if feasible." Because Indian tribes possess sovereign immunity, joinder of a tribe is not feasible unless the tribe waives its immunity or the suit is authorized by Congress. Citizen Potawatomi Nation, 248 F.3d at 997 (citing to Oklahoma Tax Commn. v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991) ("Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories.... As an aspect of this sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress."). See also Fletcher v. United States, 116 F.3d 1315, 1324 (10th Cir. 1997) and Kiowa Tribe v. Mfg. Technologies, Inc., 523 U.S. 751 (1998). The ISDEAA itself affirms the principle of tribal sovereign immunity, stating that "nothing [in the ISDEAA] shall be construed as... affecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit enjoyed by an Indian tribe..." 25 U.S.C. 450n. See Okla. Tax Commn., 498 U.S. at 510 (the ISDEAA is one of the statutes through which Congress "reiterated its approval of the doctrine of tribal sovereign immunity").

Because Cherokee Nation is a federally-recognized tribe and immune from suit — and because nothing in the ISDEAA abrogates this immunity — it is not feasible to join the Cherokee Nation in this lawsuit.

**C.    Equity and Good Conscience Dictate that This Action Should Not Proceed Among the Existing Parties.**

The Tenth Circuit has emphasized the "strong policy" favoring dismissal of a case when a tribe cannot be joined because of its sovereign immunity. Davis v. U.S., 192 F.3d 951, 960 (10th Cir. 1999). The court also added that there remains a need to weigh each of the Rule 19(b)

factors in order to determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. Id.

The four factors to be considered in Rule 19(b) are:

(1) the extent to which a judgment rendered in the party's absence might prejudice that party or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, the shaping of the relief, or other measures;

(3) whether a judgment rendered in the party's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The first factor concerns whether a judgment rendered in the absence of the party would prejudice that party. As discussed in the analysis of Rule 19(a), supra, a judgment rendered concerning the Cherokee Nation's contract in its absence would prejudice the Cherokee Nation. The consideration of the first factor under Rule 19(b) "is essentially the same as the inquiry under [Rule 19(a)(1)(B)]" into whether the continuation of the action without the absent party will impair the ability of that party to protect its interest. Enterprise Mgt. Consultants v. U.S., 883 F.2d 890, 894, n. 4 (10th Cir. 1989).

The second factor — whether measures could be taken to lessen or avoid the prejudice — also weighs in favor of dismissal because this Court is unable to lessen or avoid the prejudice to the Cherokee Nation by inserting protective provisions in the judgment or through other measures. In Citizen Potawatomi Nation, the court stated that the absent tribes would suffer

substantial prejudice "*and there was no way to lessen that prejudice*." 248 F.3d at 1001 (emphasis added). In the instant case, there is no way to fashion a remedy that would not impact Cherokee Nation's contract. In <u>Citizen Potawatomi Nation</u>, the court affirmed the District Court's dismissal based on these first two Rule 19(b) factors) factors in combination with the strong policy favoring dismissal due to tribal sovereign immunity. <u>Id</u>.

The third factor — whether a judgment rendered in the party's absence would be adequate — concerns the public interest in settling disputes in their totality, thereby avoiding the inefficient administration of justice and multiple litigation. <u>Pimentel</u>, 128 S. Ct. at 2193. Since Cherokee Nation would be a non-party to any judgment, it would not be bound by the court's judgment. In such a case, Cherokee Nation would be entitled to file a separate lawsuit to assert its interests and to challenge any action IHS may be required to take in order to comply with the court's ruling on the contract. Rulings stemming from this litigation could result in conflicting obligations for IHS and subject the United States to multiple lawsuits. The public interest is not favored by disrupting the provision of medical care to Native Americans, whether members of Cherokee Nation, UKB or members of any other tribe who reside in the area served by Hastings Hospital. Nor is the public well-served when the United States is forced to expend resources defending additional lawsuits which may follow any relief granted to the Plaintiff in this case.

This Court recognizes the ability to render an adequate judgment *for UKB* in the absence of other parties is not the issue:

> The Supreme Court has explained that Rule 19(b)'s third factor is not intended to address the adequacy of the judgment from the plaintiff's point of view. *See Patterson*, 390 U.S. at 111, 88 S.Ct. 733 ("[T]he plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them."). Rather, the factor is intended to address the adequacy of the dispute's resolution. *See id.* The concern

13

underlying this factor is not the plaintiff's interest "but that of the courts and the public in complete, consistent, and efficient settlement of controversies," that is, the "public stake in settling disputes by wholes, whenever possible." *Id.*

Davis v. Unites States, 343 F.3d 1282, 1292-93 (10th Cir. 2003).

The fourth factor concerns whether the plaintiff will have an adequate remedy if the case is dismissed. Although the UKB may not have an alternative forum in which to pursue its present claim if the case is dismissed for nonjoinder, this result is contemplated under the doctrine of tribal sovereign immunity. Dismissal based on tribal sovereign immunity, despite the lack of an available alternative forum "is less troublesome" than in other cases because "dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit." Wichita & Affiliated Tribes of Okla. v. Hodel, 788 F. 2d 765, 777 (D.C. Cir. 1986). See also, Davis, 343 F.3d at 1293-94.

Accordingly, Defendants' Motion to Dismiss is granted.

**IT IS SO ORDERED this 28th day of May 2009.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma